1  BROOKS M. BEARD (CA Bar No. 181271)
   Email:  bbeard@mofo.com
2  DANIEL A. ZLATNIK (CA Bar No. 259690)
   Email: dzlatnik@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street, 32nd Floor
4  San Francisco, California  94105-2482
   Telephone:  (415) 268-7000
5  Facsimile:   (415) 268-7522

6  EDWARD J. CADEN (CA Bar No. 166922)
   Email:  ejcaden@surewest.net
7  LAW OFFICE OF EDWARD J. CADEN
   8217 Manger Way
8  Citrus Heights, California  95610-0570
   Telephone:  (916) 729-3172
9  Facsimile:   (916) 723-2596

10  Attorneys for Plaintiffs RYAN COUCH and KENNETH
    JIMENEZ
11
                    UNITED STATES DISTRICT COURT
12
                    EASTERN DISTRICT OF CALIFORNIA
13

14
    RYAN COUCH and KENNETH JIMENEZ,        Case No. 1:08-CV-01621-LJO-DLB
15
                          Plaintiffs,      **OPPOSITION TO DEFENDANTS'**
16                                         **MOTION TO DISMISS SECOND**
            v.                             **AMENDED COMPLAINT**
17
    TOMMY WAN, KIMBERLI BONCORE, and       Date:      September 7, 2010
18  RALPH DIAZ,                            Time:      8:30 a.m.
                                           Ctrm:      4
19                        Defendants.
                                           Judge:     Honorable Lawrence J.
20                                                    O'Neill

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

Page

3   INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND ...................................................................................... 3

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ...................................................................................................................... 4

I.   PLAINTIFFS ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR
     FIRST AMENDMENT RETALIATION. ................................................................. 4

     A.   Plaintiffs Have Sufficiently Pled That Their Speech Was On a Matter of
          Public Concern. ............................................................................................... 4

     B.   Plaintiffs Have Sufficiently Pled That Their Speech Was Not Pursuant to
          Official Duties. ................................................................................................ 6

          1.   Whether Reporting Correctional Officer Misconduct to Internal
               Affairs Was Within Plaintiffs' Official Duties Is A Factual Issue,
               Not a Legal Conclusion. ...................................................................... 6

          2.   Plaintiffs' Status as "Peace Officers" Does Not Defeat the Well-
               Pleaded Facts Regarding Their Official Duties. .................................. 7

          3.   Defendants Cannot Use Judicial Notice of the CDCR Department
               of Operations Manual to Establish Facts Regarding Plaintiffs'
               Official Duties ..................................................................................... 8

               a.   Judicial Notice Cannot Extend to Factual Matters Contained
                    in the DOM ............................................................................... 9

               b.   Even If Considered, the DOM Does Not Defeat the
                    Allegations That Plaintiffs' Speech Was Outside Their
                    Official Duties .......................................................................... 10

     C.   Plaintiffs Have Sufficiently Alleged That Defendants Boncore and Diaz
          Took Adverse Action Against Them. ............................................................. 11

II.  PLAINTIFFS ALLEGE FACTS SUFFICIENT TO STATE A CLAIM UNDER
     RICO. ...................................................................................................................... 13

     A.   Plaintiffs Have Alleged Existence of Multiple Enterprises .......................... 13

     B.   Plaintiffs Have Alleged Injuries to Their Business or Property. ................... 15

     C.   Defendants' RICO Offenses Proximately Caused Plaintiffs' Injuries .......... 17

          1.   RICO Prohibits a Wide Variety of Conduct and Does Not Require
               Existence of an Official Proceeding. ................................................ 18

               a.   18 U.S.C. § 1512 Prohibits a Variety of Actions Regardless
                    of the Existence of an "Official Proceeding." ......................... 18

               b.   18 U.S.C. § 1513 Prohibits Retaliation for Communicating
                    with Law Enforcement Officers. ............................................. 20

          2.   The Transfers to Different Assignments at SATF Were RICO
               Predicate Acts That Caused Injury to Plaintiffs' Business or
               Property. ............................................................................................ 20

1

**TABLE OF CONTENTS**
(continued)

2

Page

3          a.    The Transfer of Officer Couch Violated 18 U.S.C § 1512
                  and Caused Injury to His Business or Property.............................20

4          b.    The Transfer of Officer Jimenez Violated 18 U.S.C. § 1512
                  and Caused Injury to His Business or Property.............................21

5

6      3.    In Addition to the Initial Transfers, Plaintiffs Have Alleged
              Multiple Other RICO Predicate Acts That Caused Their Injuries. ...........22

7   D.    Plaintiffs Have Alleged a Clear Pattern of Racketeering Activity .......................25

III.   TO THE EXTENT THE COMPLAINT FAILS TO STATE ANY CLAIM,
8      PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND. ...................................27

9   CONCLUSION ...................................................................................................................27

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................... passim

*Barker v. Riverside County Office of Educ.*,
584 F.3d 821 (9th Cir. 2009) ................................................................... 4, 8, 10

*Berg v. First State Ins. Co.*,
915 F.2d 460 (9th Cir. 1990) ................................................................................ 16

*Boyle v. United States*,
129 S. Ct. 2237 (2009) .......................................................................................... 14

*Bridge v. Phoenix Bond & Indem. Co.*,
128 S. Ct. 2131 (2008) .......................................................................................... 16

*Broam v. Bogan*,
320 F.3d 1023 (9th Cir. 2003) ............................................................................... 4

*Celotex v. Catrett*,
477 U.S. 317 (1986) ............................................................................................... 10

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) .................................................................................... 8

*Chaklos v. Stevens*,
560 F.3d 705 (7th Cir. 2009) .................................................................................. 9

*Cheek v. City of Edwardsville*,
514 F. Supp. 2d 1220 (D. Kan. 2007) .................................................................... 5

*Christal v. Police Commission of City and County of San Francisco*,
33 Cal. App. 2d 564 (1939) ..................................................................................... 7

*Coszalter v. City of Salem*,
320 F.3d 968 (9th Cir. 2003) ................................................................................. 11

*Cramer v. Target Corp.*,
No. 1:08-cv-01693-OWW-SKO, 2010 U.S. Dist. LEXIS 54701
(E.D. Cal. Jun. 2, 2010) .......................................................................................... 4

*Desrochers v. City of San Bernardino*,
572 F.3d 703 (9th Cir. 2009) ................................................................................. 5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) ........................................................................................ 17

*Freitag v. Ayers*,
   468 F.3d 528 (9th Cir. 2006) ...................................................................................... 4, 5

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ............................................................................................... 10, 11

*Gilligan v. Jamco Develop. Corp.*,
   108 F.3d 246 (9th Cir. 1997) ......................................................................................... 4

*Guerrero v. Gates*,
   110 F. Supp. 2d 1287 (C.D. Cal. 2000), *rev'd and remanded on other grounds*,
   442 F.3d 697, 707 (9th Cir. 2006) ........................................................................... 15, 16

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
   492 U.S. 229 (1989) ........................................................................................ 18, 25, 27

*Hemi Group, LLC v. City of New York*,
   130 S. Ct. 983 (2010) .................................................................................................. 17

*Huppert v. City of Pittsburg*,
   574 F.3d 696 (9th Cir. 2009) ...................................................................................... 7, 8

*Jackson v. Carey*,
   353 F.3d 750 (9th Cir. 2003) ......................................................................................... 4

*Khurana v. Innovative Health Care Sys., Inc.*,
   130 F.3d 143 (5th Cir. 1997), *vacated as moot*, 525 U.S. 979 (1998) .................................. 16

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ......................................................................................... 9

*Longmire v. City of Oakland*,
   No. C 10-01465 JSW, 2010 WL 2629818 (N.D. Cal. Jun. 29, 2010) ................................... 5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..................................................................................... 27

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir. 2002) ..................................................................................... 17

*Northwest Environmental Advocates v. U.S. E.P.A.*,
   537 F.3d 1006 (9th Cir. 2008) ....................................................................................... 9

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Ove v. Gwinn,*
    264 F.3d 817 (9th Cir. 2001) .................................................................. 13

4

5

*Posey v. Lake Pend Oreille Sch. Dist. No. 84,*
    546 F.3d 1121 (9th Cir. 2008) .......................................................... 10, 11

6

7

*Robinson v. York,*
    566 F.3d 817 (9th Cir. 2009) ......................................................... 4, 8, 11

8

*Roche v. E.F. Hutton & Co.,*
    658 F. Supp. 315 (M.D. Pa. 1986) ......................................................... 15

9

10

*Sadighi v. Daghighfekr,*
    36 F. Supp. 2d 279 (D.S.C. 1999) .......................................................... 16

11

*Spiegla v. Hull,*
    481 F.3d 961 (7th Cir. 2007) .................................................................... 5

12

13

*Thomas v. City of Beaverton,*
    379 F.3d 802 (9th Cir. 2004) .................................................................... 4

14

15

*Toney v. Burris,*
    829 F.2d 622 (7th Cir. 1987) .................................................................... 9

16

*Toth v. Grand Trunk R.R.,*
    306 F.3d 335 (6th Cir. 2002) .................................................................... 9

17

18

*United States v. Carson,*
    560 F.3d 566 (6th Cir. 2009) .................................................................. 19

19

*United States v. Gonzalez,*
    922 F.2d 1044 (2d Cir. 1991) .................................................................. 19

20

21

*United States v. Jannotti,*
    729 F.2d 213 (3d Cir. 1984) .................................................................. 15

22

23

*United States v. Turkette,*
    452 U.S. 576 (1981) ......................................................................... 13, 14

24

*Vierria v. Cal. Highway Patrol,*
    644 F. Supp. 2d 1219 (E.D. Cal. 2009) ................................................. 19

25

26

*Wang Labs., Inc. v. Burts,*
    612 F. Supp. 441 (D. Md. 1984) ............................................................ 16

27

28

OPPOSITION TO MOTION TO DISMISS
CASE NO. 1:08-CV-01621-LJO-DLB
sf-2885436

v

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3   *Williams v. Mohawk Indus., Inc.*,
        465 F.3d 1277 (11th Cir. 2006) .................................................................. 17

4

5   *Williams v. Riley*,
        481 F. Supp. 2d 582 (N.D. Miss. 2007) ...................................................... 6

6   *Zucco Partners, LLC v. Digimarc Corp.*,
        552 F.3d 981 (9th Cir. 2009) ...................................................................... 27

7

8

9   **STATUTES**

10  1993 Cal. Stats. Ch. 585 ...................................................................................... 14

11  15 U.S.C. § 1510 ................................................................................................. 25

12  18 U.S.C. § 1512 ........................................................................................... passim

13  18 U.S.C. § 1513 ........................................................................................... passim

14  18 U.S.C. § 1515 ................................................................................................. 20

15  18 U.S.C. § 1961 ........................................................................................... passim

16  18 U.S.C. § 1962 ............................................................................... 14, 15, 25

17  18 U.S.C. § 1964 ................................................................................................. 15

18  Cal. Labor Code § 210 ....................................................................................... 16

19  Cal. Labor Code § 218.5 .................................................................................... 16

20  Cal. Labor Code § 220 ....................................................................................... 16

21  Cal. Labor Code § 510 ....................................................................................... 16

22  Cal. Penal Code § 830.1 ................................................................................... 7, 8

23  Cal. Penal Code § 830.5 ................................................................................... 7, 8

24

25

26  **OTHER AUTHORITIES**

27  Fed. R. Civ. P. 12 .......................................................................................... 4, 8, 10

28

1

## TABLE OF AUTHORITIES
**(continued)**

2

**Page(s)**

3    Fed. R. Civ. P. 56 ................................................................................................................ 10

4    Fed. R. Evid. 201 .................................................................................................................. 9

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2      Defendants Tommy Wan, Kimberli Boncore, and Ralph Diaz ("Defendants") have

3   engaged in a long pattern of illegal conduct involving powerful inmates—referred to as

4   "peacekeepers"—to enlist their assistance in disciplining other inmates and maintaining control

5   over the prison population.  Defendants have suppressed evidence, impeded or prevented

6   investigations, knowingly and intentionally failed to respond to crimes and threats of violence,

7   and even retaliated against fellow officers, all in an effort to maintain favor with peacekeepers—

8   who are often Southern Mexican gang members—and cover up their illegal activities.  Despite

9   Defendants' mocking of the term "peacekeepers" as "ironic," their cooperation with

10  peacekeepers has had serious and tragic consequences, including violent assaults, death, and

11  increased drugs and weapons trafficking through the Substance Abuse and Treatment Facility

12  ("SATF"), a facility of the California Department of Corrections and Rehabilitation ("CDCR").

13  To avoid liability for their misconduct, Defendants have engaged in a pattern of demotions,

14  intimidation, harassment, and retaliation.

15      Defendants' illegal conduct has directly harmed Officers Ryan Couch and Kenneth

16  Jimenez ("Plaintiffs"), career correctional officers at SATF.  When Officers Couch and Jimenez

17  attempted to investigate crimes committed by peacekeepers, Defendants prevented them from

18  doing so by demoting them and transferring them to different positions, because permitting such

19  investigations would have revealed Defendants' illegal conduct.  Defendants further covered up

20  their illegal activities and the illegal conduct of the peacekeepers by hiding information from the

21  district attorney's office, deliberately suppressing evidence, and intimidating, harassing, and

22  retaliating against anyone, including Officers Couch and Jimenez, who investigated

23  peacekeepers.  Defendant Wan even misled and refused to cooperate with federal agents on

24  multiple occasions when they attempted to investigate gang activity at SATF, including drugs

25  and weapons smuggling.  When Officer Couch attempted to cooperate with federal agents,

26  Defendant Wan demoted him in retaliation for doing so and intimidated Officer Couch to prevent

27  him from providing useful assistance to the federal agents, because an investigation into the

28

1    peacekeepers' illegal activities would have uncovered Defendants' illegal activities.

2         Despite it being policy within Defendant Wan's Investigative Services Unit ("ISU") at

3    SATF that correctional officers were never to report problems outside ISU, Officers Couch and

4    Jimenez voiced their concerns to CDCR's Internal Affairs Division.  Defendants then took action

5    to retaliate against Officers Couch and Jimenez for speaking to internal affairs and to prevent

6    them from further interfering with Defendants' illegal cooperation with peacekeepers.

7    Defendants transferred and demoted Officers Couch and Jimenez, made their workloads

8    untenable, and eventually ousted them from ISU, forcing them into lower-level positions as

9    Housing Officers and setting back their careers considerably.  In retaliation for bringing this

10   lawsuit, Defendants fabricated charges of misconduct against Officer Jimenez.

11        Officers Couch and Jimenez allege violations of their First Amendment right to free

12   speech as well as violations of the Racketeer Influenced and Corrupt Organizations Act

13   ("RICO").  After this Court dismissed the First Amended Complaint except with respect to the

14   First Amendment claim against Defendant Wan, Plaintiffs appealed.  The Ninth Circuit reversed

15   in part and remanded, identifying two additional facts that Officers Couch and Jimenez needed to

16   plead.  With respect to the First Amendment claim, Plaintiffs had to allege that they made

17   protected speech outside the scope of their official duties.  Thus, Plaintiffs have added clear

18   allegations to this effect that comport with Ninth Circuit and Supreme Court precedent, including

19   allegations of well-known policies at SATF and specific instructions by their superiors regarding

20   limitations on the scope of their official duties.  With respect to the RICO claim, Plaintiffs had to

21   allege that the conduct that violated RICO proximately caused their injuries.  Thus, Plaintiffs

22   have added clear allegations linking their injuries directly to Defendants' RICO violations.  For

23   example, their demotions and dismissals, obviously a source of concrete harm, were themselves

24   RICO violations intended to cover up Defendants' misdeeds and keep Plaintiffs from revealing

25   Defendants' illegal activities to federal law enforcement officials.

26        Plaintiffs have fully complied with the Ninth Circuit's directive.  Nevertheless,

27   Defendants seek dismissal, relying mostly on the same grounds that they raised with respect to

28   the First Amended Complaint, grounds which the Ninth Circuit has already addressed and

1    rejected in part.  Indeed, Defendants include arguments in their current motion that are no longer

2    even relevant to this case, having apparently copied-and-pasted them from their earlier motion.

3         Finally, the Defendants offer only irrelevant and insufficient arguments with respect to

4    the two facts that the Ninth Circuit identified as missing from the First Amended Complaint.

5    With respect to the "beyond the scope of official duties" element of the First Amendment claim,

6    Defendants attempt to introduce contrary factual evidence and then rely on spurious arguments

7    to overcome Plaintiffs' well-pleaded facts.  A motion to dismiss is the improper time to make

8    such arguments, meritless or not.  With respect to the proximate cause element of the RICO

9    claim, Defendants offer an overly restrictive view of the conduct that violates RICO and simply

10   ignore the content of the Second Amended Complaint, which spells out numerous instances of

11   RICO violations that caused Plaintiffs injury.

12        In sum, Defendants' motion should be denied.

13                          **PROCEDURAL BACKGROUND**

14        After this suit was severed from a similar case pending in the Eastern District of

15   California, Sacramento Division, Plaintiffs filed their First Amended Complaint on

16   November 12, 2008.  (Dkt. 69.)  Defendants moved to dismiss the First Amended Complaint on

17   December 31, 2008.  (Dkts. 77-80.)  The Court dismissed with prejudice the RICO claims

18   against Defendant Wan and all claims against the remaining Defendants on February 6, 2009.

19   (Dkt. 89.)  The Plaintiffs appealed to the Ninth Circuit, which reversed the dismissal and

20   remanded with specific instructions on how Plaintiffs needed to amend their complaint.

21   (Memorandum Filed May 14, 2010 (Dkt. 108) ("9th Cir. Op.").)  With respect to the First

22   Amendment Claim, the Ninth Circuit instructed Plaintiffs to plead facts showing that their

23   speech was not made within their official duties.  (*Id*. at 5.)  With respect to RICO, the Ninth

24   Circuit instructed Plaintiffs to show how Defendants' RICO violations proximately caused

25   Plaintiffs' injuries.  (*Id*. at 12-13.)  On July 8, 2010, Plaintiffs filed the Second Amended

26   Complaint in accordance with the Ninth Circuit's order.  (Dkt. 114 ("SAC").)

27

28

1

**LEGAL STANDARD**

2       A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely

3 granted." *Gilligan v. Jamco Develop. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotation

4 omitted); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Rule 12(b)(6) imposes a

5 stringent standard for dismissal: the court accepts all facts in the complaint as true and must draw

6 inferences in the light most favorable to the plaintiffs. *Barker v. Riverside County Office of*

7 *Educ.*, 584 F.3d 821, 824 (9th Cir. 2009). A plaintiff must plead "plausible grounds" for relief,

8 which simply requires facts that "allow[] the court to draw the reasonable inference that the

9 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009);

10 *see also Cramer v. Target Corp.*, No. 1:08-cv-01693-OWW-SKO, 2010 U.S. Dist. LEXIS

11 54701, at *5 (E.D. Cal. Jun. 2, 2010) (quoting *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir.

12 2003) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is

13 entitled to offer evidence to support the claims.")).

14

**ARGUMENT**

15 **I.      PLAINTIFFS ALLEGE FACTS SUFFICIENT TO STATE A CLAIM FOR FIRST AMENDMENT RETALIATION.**

16

17       Defendants incorrectly assert that Plaintiffs' First Amendment claim does not involve

18 speech on a matter of public concern or speech made pursuant to Plaintiffs' official duties.

19 These are Defendants' only objections, and their motion to dismiss should be denied.

20       **A.      Plaintiffs Have Sufficiently Pled That Their Speech Was On a Matter of Public Concern.**

21

22       As the Ninth Circuit has stated, "[u]nlawful conduct by a government employee or illegal

23 activity within a government agency is a matter of public concern." *Thomas v. City of*

24 *Beaverton*, 379 F.3d 802, 809 (9th Cir. 2004); *see also Robinson v. York*, 566 F.3d 817, 822-23

25 (9th Cir. 2009) (internal reports of misconduct within police department was speech on matter of

26 public concern). This rule applies with full force to California prisons, such that "proper

27 administration of our prisons generally is *undoubtedly of great public interest*." *Freitag v. Ayers*

28

1    468 F.3d 528, 545 (9th Cir. 2006) (emphasis added).

2         Plaintiffs have pleaded speech regarding exactly this public concern.  In complaints to

3    internal affairs, Plaintiffs voiced their concerns about a pattern of illegal conduct by employees

4    at SATF, a state facility for confining dangerous criminals, including:

5    - Defendant Boncore's knowledge of a violent attack on another inmate (SAC ¶ 89);

6    - Boncore's connection with a recently murdered inmate and the perpetrator of that
         murder (SAC ¶ 112); and
7

8    - Defendants Wan and Boncore's suppression of evidence and illegal cooperation with
         peacekeepers (SAC ¶ 138-139).

9    Their complaints to internal affairs thus concerned the "proper administration" of California's

10    prisons.  Moreover, these acts were part of the broad pattern of misconduct specified in the

11    Second Amended Complaint.  The corruption at SATF has resulted in violent assaults (*e.g.*, SAC

12    ¶¶ 62, 79, 109), suppression of criminal investigations (*e.g.*, SAC ¶¶ 66, 86, 101, 115, 121, 133,

13    172, 185), and the protection of gang members involved in criminal activities (e.g., SAC ¶¶ 105,

14    195, 211-212).  Consistent with *Freitag*, Plaintiffs' speech, including the act of filing this

15    lawsuit, concerned a matter of grave public concern.  468 F.3d at 545.

16         Defendants' contention that these are not matters of public concern lacks merit, *see*

17    *Freitag*, 468 F.3d at 545, and the cases they cite are not on point.  For example, in *Longmire v.*

18    *City of Oakland*, No. C 10-01465 JSW, 2010 WL 2629818 (N.D. Cal. Jun. 29, 2010), the court

19    did not find that the alleged speech was not on a matter of public concern.  Rather, the court

20    granted leave to amend the complaint because the complaint did not sufficiently explain the

21    subject of the speech.  *Id.* at *4.  And in *Desrochers v. City of San Bernardino*, 572 F.3d 703 (9th

22    Cir. 2009), the speech concerned tension in the workplace, not wrongdoing or corruption.

23    Neither scenario applies here.  Officers Couch and Jimenez have unambiguously alleged that the

24    speech at issue concerned government corruption and unlawful conduct, which are clear public

25    concerns, not mere personality disputes in the workplace.[1]  Plaintiffs have met their burden of

26    ───────────────────────
27         [1] The remaining cases cited by Defendants are even less relevant.  In each case, the speech
      at issue was unprotected, not because it did not address a public concern, but because it was made
      pursuant to official duties.  *See Spiegla v. Hull*, 481 F.3d 961, 966-97 (7th Cir. 2007); *Cheek v.*
28    (Footnote continues on next page.)

1    pleading speech on a matter of public concern.

2    **B.      Plaintiffs Have Sufficiently Pled That Their Speech Was Not Pursuant to Official Duties.**

3

4    Defendants make three attempts to overcome Plaintiff's allegations regarding their

5    official duties.  First, they miscast these allegations as a "legal conclusion."  Second, they offer a

6    spurious argument based on their contrary view of the facts.  Third, they rely on outside evidence

7    that they believe will disprove Plaintiffs' allegations.  None of these measures can defeat

8    Plaintiffs' well-supported allegations that they did not speak to internal affairs pursuant their

9    official duties.  In addition, Defendants do not dispute that bringing this lawsuit, an act expressly

10   protected by the First Amendment, was outside the scope of Plaintiffs' official duties.

11   **1.      Whether Reporting Correctional Officer Misconduct to Internal Affairs Was Within Plaintiffs' Official Duties Is A Factual Issue, Not a Legal Conclusion.**

12

13

14   In *Ashcroft v. Iqbal*, the Supreme Court explained that legal conclusions, or "threadbare

15   recitals of the elements of a cause of action," are not entitled to the assumption of truth for

16   purposes of a motion to dismiss.  129 S. Ct. at 1949.  But even under *Iqbal*, legal conclusions are

17   sufficient if they are "supported by factual allegations," and the Second Amended Complaint

18   meets, and in fact exceeds, this minimal burden.  *See id*. at 1940-41.

19   Plaintiffs offer specific factual allegations to support the conclusion that their speech was

20   not made pursuant to their official duties.  Plaintiffs need not *prove* this element, but rather need

21   only allege facts that make it *plausible*.  *Id*.  To this end, Plaintiffs specifically allege that

22   Defendant Wan, their superior with authority over their job performance, repeatedly instructed

23   ISU officers that they were not to report suspected misconduct outside of ISU.  (SAC ¶¶ 141,

24   157.)  The Second Amended Complaint further alleges facts showing that SATF policy actually

25   prohibited Plaintiffs from investigating misconduct by other correctional officers.  (SAC ¶¶ 89-

26   (Footnote continued from previous page.)

27   *City of Edwardsville*, 514 F. Supp. 2d 1220, 1222 (D. Kan. 2007); *Williams v. Riley*, 481 F. Supp. 2d 582, 584 (N.D. Miss. 2007).

28

1   90, 249-252, 304.)  These well-pleaded factual allegations meet Plaintiffs' burden of alleging

2   more than unsupported conclusions.  *See Iqbal*, 129 S. Ct. at 1940-41.

3           **2.      Plaintiffs' Status as "Peace Officers" Does Not Defeat the Well-
                      Pleaded Facts Regarding Their Official Duties.**
4

5           Trying to obscure the well-pleaded facts regarding the scope of Plaintiffs' official duties,

6   Defendants offer a stilted legal argument based on Plaintiffs' statutory classification as "peace

7   officers."  Defendants' analysis is fatally flawed.

8           California Penal Code § 830.5(b) defines correctional officers as "peace officers" but

9   says nothing substantive about their official duties.  Ignoring this obvious void, Defendants' rely

10  on *Huppert v. City of Pittsburg*, in which the Ninth Circuit relied on seventy-year-old precedent

11  for the proposition that *police officers*, as "the guardians of the peace and security of the

12  community," have a general duty to detect and report all information known to them regarding

13  possible crimes.  574 F.3d 696, 707 (9th Cir. 2009) (quoting *Christal v. Police Commission of*

14  *City and County of San Francisco*, 33 Cal. App. 2d 564 (1939)).  *Huppert* concerned police

15  officers charged with fighting crime in the community at large, not correctional officers working

16  within California's prisons.  *Id.*  Nevertheless, Defendants argue that whatever duties applied to

17  the *police officer* in *Huppert* must apply to *correctional officers* simply because Penal Code §

18  830.5(b) defines them as peace officers.  (Def.'s Mem. of P&A's in Supp. of Def.'s Mot. to

19  Dismiss Pltf.'s Second Am. Compl., filed July 28, 2010 (Dkt. 116) ("Mot.") at 8-9.)  But

20  Defendants provide no authority for equating police officers and correctional officers.

21          For at least two reasons, Defendants' misleading argument fails.  First, it is contrary to

22  California law, which expressly differentiates among various categories of peace officers.  Penal

23  Code § 830.5 specifically limits correctional officers' authority to those places where they are

24  "engaged in the performance of the duties of their respective employment."  In contrast, section

25  830.1 states that police officers have authority with respect to any "public offenses" committed

26  in their presence or where they are employed as officers.  These statutes offer no insight into

27  whether Plaintiffs' complaints to internal affairs were within their official duties.  At most, the

28  statutes establish that different categories of "peace officers" do not share the same scope of

1    official duties.  Thus, the discussion in *Huppert* regarding police officers has nothing to do with

2    the factual issue of the duties assigned to correctional officers, who are distinct from police

3    officers under California law.  *See, e.g.*, Cal. Penal Code §§ 830.1, 830.5.

4         Second, even if correctional officers were equivalent to police officers, complaints to

5    internal affairs would not necessarily be within the scope of their duties as a matter of law.

6    *Huppert* does not even address this issue, because that case involved a police officer specifically

7    assigned to investigate corruption, not a police officer who volunteered information to internal

8    affairs.  574 F.3d at 698-701.  *Robinson* is more on point.  In that case, a police officer alleged

9    retaliation for his reports to internal affairs about police misconduct.  566 F.3d at 820-21.  The

10   district court denied defendants' motion for summary judgment.  The Ninth Circuit, noting that

11   the scope of the officer's duties was a question of fact, refused to second-guess the district

12   court's ruling that there was a material dispute as to that question.  *Id.* at 824.  Here, the scope of

13   Plaintiffs' job duties is similarly a question of fact.  Defendants cannot establish that Plaintiffs'

14   complaints were within their official job duties as a matter of law simply by incorrectly

15   attempting to redefine Plaintiffs as police officers.  *See id.*

16        The scope of correctional officers' duties is a factual question that Defendants cannot

17   dodge by resorting to faulty legal arguments.  Plaintiffs have pled facts sufficient to show that

18   their speech was outside the scope of their official duties, and those facts must be assumed to be

19   true for purposes of Defendants' motion to dismiss.

20              **3.     Defendants Cannot Use Judicial Notice of the CDCR Department of
                         Operations Manual to Establish Facts Regarding Plaintiffs' Official
21                       Duties.**

22        Defendants improperly rely on the CDCR's Department of Operations Manual ("DOM")

23   to make a factual counterargument to Plaintiffs' allegations.  This evidence is beyond Plaintiffs'

24   pleading, so it is unavailable on a Rule 12(b)(6) motion.  *See Cervantes v. City of San Diego*,

25   5 F.3d 1273, 1274 (9th Cir. 1993).  Even if it were to consider the DOM, the Court must still

26   draw all reasonable inferences in Plaintiffs' favor and accept all their factual allegations as true.

27   *Barker*, 584 F.3d at 824; *Iqbal*, 129 S. Ct. at 1949.  The Second Amended Complaint thus

28   "state[s] a claim to relief that is plausible on its face," so Defendants' motion must fail.  *See*

1    *Iqbal*, 129 S. Ct. at 1949 (quotation omitted).

2                              **a.      Judicial Notice Cannot Extend to Factual Matters Contained in the DOM.**

3

4            Defendants improperly seek to have the Court take notice of a *factual* issue: whether the

5    Plaintiffs' speech was made pursuant to an official duty.  (Mot. at 9-10.)  However, judicial

6    notice of facts cannot extend to facts that are "subject to reasonable dispute."  Fed. R. Evid. 201;

7    *see Lee v. City of Los Angeles*, 250 F.3d 668, 688–690 (9th Cir. 2001).  Even where a court takes

8    notice public records, it may not take as true any disputed facts stated in those records.  *Id.*

9            Defendants' Request for Judicial Notice asserts the uncontroversial point that courts can

10   take notice of "a policy or regulation of a state agency."  (Dkt. 117 at 2.)  Obviously, courts must

11   take notice of the laws that apply to disputes before it.  *Toney v. Burris*, 829 F.2d 622, 626-27

12   (7th Cir. 1987).  But Defendants do not seek judicial notice of a law or regulation; they seek

13   notice of facts extrapolated from the DOM.  The DOM may or may not accurately reflect the

14   scope of Plaintiffs' official duties, so judicial notice of the DOM cannot establish that scope as a

15   matter of law.  *See Lee*, 250 F.3d at 688-690; *see also Toth v. Grand Trunk R.R.*, 306 F.3d 335,

16   349 (6th Cir. 2002) ("[J]udicial notice is generally not the appropriate means to establish the

17   legal principles governing the case."); *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)

18   (despite statutory "duty to report" anticompetitive practices, employees' letter protesting such

19   practices was not pursuant to job duties because defendants did not actually *expect* plaintiffs to

20   write such a letter).

21           The case cited by Defendants' Request for Judicial Notice, *Northwest Environmental

22   Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1026-1027 (9th Cir. 2008), does not support judicial

23   notice of the facts that Defendants seek to establish through the DOM.  In that case, the court

24   took judicial notice of the fact that a government agency *made* a particular statement (that "use

25   of general permit(s) would appear to be an attractive possibility").  *Id.* (citation omitted).  The

26   court did not take notice of the *truth* of that statement.  *Id.*  Likewise, Defendants cannot seek

27   judicial notice of the DOM to establish the factual issue of Plaintiffs' official duties.

28

**b.      Even If Considered, the DOM Does Not Defeat the Allegations That Plaintiffs' Speech Was Outside Their Official Duties.**

The Ninth Circuit treats the scope of employees' official job duties as a "mixed question of fact and law" requiring a fact-finder's determination as to a plaintiff's actual responsibilities. *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008).

Nevertheless, Defendants attempt to reduce the question of Plaintiffs' job duties to a legal issue determined solely by reference to the DOM. But the Supreme Court in *Garcetti v. Ceballos* expressly warned against this approach:

> *The proper inquiry is a practical one.* Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is *neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties* for First Amendment purposes.

547 U.S. 410, 424-425 (2006) (emphasis added). The Ninth Circuit dealt with a similar scenario in *Posey*. In that case, a school district employed the plaintiff as a "security specialist." 546 F.3d at 1123-24. After the plaintiff expressed his concerns about safety in a lengthy letter to the district's top administrators, the school district allegedly retaliated against him. *Id*. at 1124. The district court granted summary judgment for the school district, concluding that the plaintiff spoke as an employee, not as a citizen. *Id*. at 1125-1126. The Ninth Circuit reversed, because "the pleadings and evidence . . . present[ed] genuine disputes of material fact regarding the scope and content of [plaintiff's] job responsibilities." *Id*. at 1129. The scope of the plaintiff's job responsibilities was a factual issue for the jury, not the court, to decide. *Id*. at 1128-29.

Here, Defendants have done nothing more than raise a factual dispute regarding Plaintiffs' job responsibilities, which is a dispute for a jury to resolve. *See id*. This showing is especially inadequate on a motion to dismiss, where the Court must accept Plaintiffs' allegations as true. *See Barker*, 584 F.3d at 824. Moreover, even if the Court were to consider the DOM and convert the motion to one for summary judgment pursuant to Rule 12(d), there is no record that could establish the scope of Plaintiffs' official duties as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986) (summary judgment under Rule 56 requires

1    "adequate time for discovery").  Defendants' motion would ask the Court to grant summary

2    judgment indistinguishable from the one reversed by the Ninth Circuit in *Posey*, except that in

3    *Posey* the parties had actually conducted discovery.  *See Posey*, 546 F.3d at 1129; *see also*

4    *Robinson,* 566 F.3d at 823-24 (whether internal complaints of misconduct were within police

5    officer's official duties was disputed question of fact reserved for the fact-finding process).

6         Defendants thus cannot overcome Plaintiffs' well-pleaded allegations regarding the scope

7    of their official duties, which is a practical determination for a jury to make, not a formalistic,

8    legal inquiry.  *See Ceballos*, 547 U.S. at 424-425; *Posey*, 546 F.3d at 1128-29.  Drawing all

9    reasonable inferences in Plaintiffs' favor, they have sufficiently pleaded protected speech and a

10   plausible claim for relief, so Defendants' motion should be denied.  *See Iqbal*, 129 S. Ct. at 1949.

11        **C.    Plaintiffs Have Sufficiently Alleged That Defendants Boncore and Diaz Took**
               **Adverse Action Against Them.**
12

13        Defendants concede that Plaintiffs have sufficiently alleged Defendant Wan's

14   involvement in adverse actions against Plaintiffs (Mot. at 11), but argue that the allegations

15   against Defendants Boncore and Diaz are insufficient.  Defendants are mistaken.[2]

16        A claim for retaliation for protected speech requires involvement in a retaliatory "adverse

17   action."  *Coszalter*, 320 F.3d at 975.  The adverse action need not involve a burden or removal of

18   a benefit.  *Id.*  All that is required is that the action is designed to chill protected expression.  *Id.*

19        Defendant Boncore participated in the removal of Plaintiffs from their positions at ISU,

20   actions the Ninth Circuit acknowledged as adverse employment actions.  (9th Cir. Op. at 5.)  The

21   Second Amended Complaint clearly alleges that Defendant Boncore participated in the decision

22   with Defendants Wan and Diaz to transfer Couch in order to protect inmate Pinuelas.  (SAC ¶¶

23   96-99.)  The Second Amended Complaint also makes clear that Boncore had supervisory

24   authority at ISU, and that she used her authority to demand that Jimenez and Couch stay away

25   _____

26        [2] Defendants also point out that their conduct did not successfully deter Plaintiffs from
     speaking to Internal Affairs.  (Mot. at 12.)  Actual deterrence of speech is not an element of
27   Plaintiffs' claim.  *See Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003).

28

1   from her investigations of the Zavala murder and the Acosta attack.  (SAC ¶¶ 51-57, 92-97, 109-

2   113.)  Plaintiffs also allege that, after Plaintiffs complained to internal affairs, Boncore met with

3   Defendants Wan and Diaz, and the three of them decided to initiate a process to remove Officers

4   Couch and Jimenez from ISU.  (SAC ¶ 144.)

5          Defendants' only opposition to these allegations is that Boncore "is only a correctional

6   officer, not a supervisor with the ability to affect [*sic*] such a transfer."  (Mot. at 11.)  But the

7   Ninth Circuit already squarely rejected this argument.  In remanding this case for Plaintiffs to

8   amend their pleading, the Ninth Circuit explained that, according to the First Amended

9   Complaint,[3] Boncore "did have some supervisory authority over [plaintiffs]."  (9th Cir. Op. at 4-

10  5.)  Therefore, the court expressly noted that Defendant Boncore's actions would be cognizable

11  under the First Amendment if they were in "retaliation for *protected* speech."  (*Id*. at 5 (emphasis

12  in original).)  As explained above, Plaintiffs have alleged protected speech, so Defendants'

13  argument with respect to Defendant Boncore fails.

14         Defendants' argument regarding Diaz suffers the same fatal defects.  Diaz revealed

15  evidence to an inmate that resulted in a threat on Couch's life, and he participated in the

16  decisions to transfer Officers Couch and Jimenez and to remove them from ISU for prosecuting

17  peacekeepers.  (SAC ¶¶ 96, 144, 200, 252; 9th Cir. Op. at 5.)  Therefore, the Ninth Circuit

18  explained that the First Amended Complaint asserted "a plausible allegation that Diaz personally

19  retaliated against the two officers for their protected speech."  (9th Cir. Op. at 5.)  As with

20  Defendant Boncore, the Ninth Circuit explained that Diaz's actions would be cognizable if they

21  were "done in retaliation for *protected* speech."  (*Id*. at 5 (emphasis in original).)  As explained

22  above, Plaintiffs have alleged protected speech, so Defendants have no room to argue that the

23  allegations against Diaz are insufficient.  Defendants' motion should be denied.

24

25

26  _____

27         [3] The Second Amended Complaint does not omit any facts from the First Amended
    Complaint cited by the Ninth Circuit.

28

1    **II.     PLAINTIFFS ALLEGE FACTS SUFFICIENT TO STATE A CLAIM UNDER RICO.**

2

3           Because it alleges an enterprise whose activities Defendants conducted and participated

4    in through a pattern of RICO violations ("racketeering activity" or "predicate acts"), and injuries

5    proximately caused by racketeering activity, the Second Amended Complaint states a claim

6    under RICO.  *See Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001).

7           **A.     Plaintiffs Have Alleged Existence of Multiple Enterprises.**

8           An enterprise is any "group of persons associated together for a common purpose of

9    engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981).

10   Although legal entities are enterprises, an enterprise need not be a formal entity; all that is

11   required is a group of persons associated together for a common purpose of engaging in a course

12   of conduct.  *Id*.

13          Defendants' contend that Plaintiffs have not alleged a "RICO enterprise," but this

14   argument already failed at the Ninth Circuit.  On appeal of the dismissal of the First Amended

15   Complaint, Plaintiffs argued that the CDCR, the association-in-fact between the Defendants

16   themselves, and the association-in-fact between the Defendants and the prison gangs with whom

17   they cooperate each satisfy RICO's enterprise requirement.  (Appellants' Opening Brief at 41-47

18   (attached as Ex. A to Plaintiffs' Request for Judicial Notice ("Pltf's RJN")).)  The Ninth Circuit

19   reversed the dismissal and instructed this Court that Plaintiffs could state a RICO claim if they

20   "allege facts establishing proximate cause."  (9th Cir. Op. at 12-13.)  Because such an

21   amendment would be futile if Plaintiffs had not met the basic "enterprise" requirement, the Ninth

22   Circuit necessarily rejected Defendants' argument on this issue.  Nevertheless, Defendants

23   mostly repeat their old arguments regarding the existence of an enterprise.  In fact, they have

24   actually *copied and pasted* portions of their previous briefing on this issue.  (Def.'s Mem. of

25   P&A's in Supp. of [Def.'s] Mot. to Dismiss Pltf.'s First Am. Compl., filed December 31, 2008

26   (Dkt. 80-2) ("MTD FAC") at 13-15.)  Rather than similarly repeating verbatim their past

27   arguments, which already succeeded, Plaintiffs refer the Court to their Opening Brief before the

28

1    Ninth Circuit and the Ninth Circuit's ruling.  (Appellants' Opening Brief at 41-47; 9th Cir. Op. at

2    9-13.)

3         In addition to the enterprises identified before the Ninth Circuit, SATF is an enterprise by

4    definition under RICO, because it is a "legal entity."[4]  18 U.S.C. § 1961(4).  SATF also

5    comprises a group of persons associated together for a common purpose, and Defendants do not

6    contend otherwise.[5]  Instead, Defendants argue, with no support, that Plaintiffs must allege a

7    separate "enterprise between the individual [D]efendants."[6]  (Mot. at 18.)  Even if this were true,

8    it would get Defendants nowhere, because the Ninth Circuit already held that the First Amended

9    Complaint alleged sufficient facts "to demonstrate an agreement to violate RICO" among Wan,

10   Boncore, and Diaz.  (9th Cir. Op. at 13.)  This is sufficient to show that the Defendants were an

11   association-in-fact and an enterprise under RICO.  *See Turkette*, 452 U.S. at 583.

12        Defendants' argument that Defendants themselves must be the "enterprise" for RICO

13   purposes is also incorrect under the plain language of 18 U.S.C. § 1962(c), which is the basis for

14   Defendants' liability.  That statute makes it "unlawful for any person employed by or associated

15   with *any enterprise* engaged in, or the activities of which affect, interstate or foreign commerce,

16   to conduct or participate . . . in the conduct of *such enterprise's* affairs through a pattern of

17   racketeering activity."  18 U.S.C. § 1962(c) (emphasis added).  The statute does not require an

18   enterprise that exists wholly for the purpose of carrying out racketeering activity.  Rather, it

19   simply prohibits individuals associated with "*any* enterprise" from participating in "*such*

20   enterprise's" affairs through racketeering activity.  *Id*.  Also, Defendants concede that SATF is

21   _____

22        [4] SATF was established by law in 1993.  1993 Cal. Stats. Ch. 585.

23        [5] Defendants incorrectly contend that, to state a claim, Plaintiff must "prove" the
24   existence of an enterprise.  Plaintiffs' burden at this stage is only to plead factual allegations
     sufficient to state a plausible claim.  *See, e.g., Iqbal*, 129 S. Ct. at 1949.

25        [6] Even if SATF were not an enterprise for RICO purposes, the Court could infer the
26   existence of an informal enterprise between Defendants from the allegations showing that they
     engaged in a pattern of racketeering activity.  *See Boyle v. United States*, 129 S. Ct. 2237, 2239-
27   49 (2009) (clarifying holding in *U.S. v. Turkette*, 452 U.S. 576 (1981)).

28

1    an alleged enterprise affecting interstate commerce and that they are associated with SATF.

2    (Mot. at 18.)  They have "conducted" or "participated in the conduct" of SATF's affairs, which

3    is the entire focus of the Second Amended Complaint.  Therefore, Plaintiffs have pled the

4    existence of an "enterprise" under RICO.

5           The only case Defendants cite in support of their position, *Roche v. E.F. Hutton & Co.,*

6    658 F. Supp. 315 (M.D. Pa. 1986), actually supports the exact opposite conclusion.  In that case,

7    the "enterprise" was the defendants' employer.  Defendants sought dismissal on the grounds that,

8    because they did not hold managerial positions, they could not have "conducted" their

9    employer's affairs through racketeering activity.  But the court roundly rejected that argument

10   and explained that "conducting" the affairs of an enterprise merely requires conduct "related to

11   the activities of that enterprise."  *Roche*, 658 F. Supp. at 319 (citing *United States v. Jannotti*,

12   729 F.2d 213, 226 (3d Cir. 1984)).  The court found the plaintiffs' pleading sufficient, because

13   they alleged that defendants committed predicate RICO offenses in connection with the activities

14   of defendants' employer.  *Id*. at 319.

15          Similarly, Officers Couch and Jimenez have pled that Defendants carried out their duties

16   at SATF, which is undisputedly an enterprise, through a pattern of racketeering activity.  As with

17   the pleading in *Roche*, this is all that is required with respect to the existence of an enterprise.

18   *See Roche*, 658 F. Supp. at 319; 18 U.S.C. § 1962(c).

19          **B.     Plaintiffs Have Alleged Injuries to Their Business or Property.**

20

21          RICO provides a cause of action for "[a]ny person injured in his business or property"

22   through violations of RICO's criminal provisions.  18 U.S.C. § 1964(c).  "Loss of employment,

23   denial of employment benefits, loss of business opportunities, and damage to professional

24   reputation have all been held to constitute cognizable injuries to business or property for

25   purposes of RICO."  *Guerrero v. Gates*, 110 F. Supp. 2d 1287, 1293 (C.D. Cal. 2000), *rev'd and*

26   *remanded on other grounds*, 442 F.3d 697, 707 (9th Cir. 2006) (holding that plaintiff's

27   allegations met RICO's standing requirement).  Such injuries must be financial, as opposed to

28

1    personal or emotional.[7]  *See id.*

2           Defendants claim that Plaintiffs "allege only a financial loss and not a deprivation of a

3    property interest."[8]  (Mot. at 15.)  This objection fails for at least three reasons.  First, financial

4    loss is all that RICO liability requires, so Defendants actually have conceded that Plaintiffs'

5    pleading is sufficient.  *See Guerrero*, 442 F.3d at 707.  Second, Defendants base their objection

6    on the blatantly wrong proposition that state law does not protect Plaintiffs' interest in

7    "compensat[ion] for extra hours that they had to work."  (Mot. at 15.)  California's wage and

8    hour laws vigorously protect exactly that interest.  *See, e.g.,* Cal. Labor Code §§ 210 (providing

9    penalties for failure to pay wages for hours worked), 218.5 (requiring payment of attorney fees in

10   suit for nonpaid wages), 510 (guaranteeing premium pay for overtime); *cf.* Cal. Labor Code §

11   220 (except for certain sections, labor code applies to state employees).  Third, even if these

12   protections did not exist, Plaintiffs still state an injury, because lost financial opportunity, as

13   opposed to out-of-pocket expenses, also constitutes financial injury under RICO.  *See Bridge v.*

14   *Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2138 (2008); *Guerrero*, 442 F.3d at 707.

15          Defendants also misinterpret RICO to exclude injuries such as lost opportunities for

16   overtime, diminished future employment prospects, harm to professional reputation, and reduced

17   opportunity for promotion.  (Mot. at 14-15.)  To the contrary, the Ninth Circuit has recognized

18   that employees hold a "legal entitlement to business relations" that is part of their "business or

19          [7] Although "personal injuries" are not covered by RICO, *Berg v. First State Ins. Co.*, 915
20   F.2d 460, 462 (9th Cir. 1990), courts have held that injury to one's *professional* reputation is
     cognizable under RICO.  *See, e.g., Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143,
21   150-52 (5th Cir. 1997), *vacated as moot*, 525 U.S. 979 (1998); *Wang Labs., Inc. v. Burts*, 612 F.
     Supp. 441, 444 (D. Md. 1984); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 279, 290 (D.S.C. 1999).
22

23          [8] Defendants misread *Guerrero* to require a *complete* deprivation of a property interest,
     so that Plaintiffs would have no cause of action as long as they had "gainful employment with
24   CDCR."  (Mot. at 14.)  But *Guerrero* made no such pronouncement; any financial harm to
     *business or property* is sufficient, regardless of whether it is complete.  *See Guerrero*, 442 F.3d
25   at 707.  In fact, the Ninth Circuit in *Guerrero* reversed dismissal of RICO claims because the
     plaintiff's allegation of "a material diminishment of [his] *employment prospects*" was sufficient
26   to plead the required "injury to business or property."  *Id.* (emphasis added, alteration in original,
     citation omitted).

27

28

1    property."  *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168 n.4 (9th Cir. 2002).  So, where an

2    employer commits RICO violations that result in lower wages for its employees, this constitutes

3    an injury to those employees under RICO.  *Id.* (depressed wages were cognizable harm under

4    RICO without a showing of a "property right" in the wages, because employees have a "legal

5    entitlement to business relations unhampered by [RICO predicate acts]"); *see also Diaz v. Gates*,

6    420 F.3d 897, 899, 900 (9th Cir. 2005) (approving reasoning of *Mendoza* because "California

7    law protects the legal entitlement to both current and prospective contractual relations").

8         Plaintiffs allege injuries consistent with the above authorities.  First, as Defendants

9    concede, the allegations of unpaid wages are financial losses (SAC ¶ 292), and they are

10   cognizable under RICO.  *See Mendoza*, 301 F.3d at 1168-69 (allegation of depressed wages

11   states an injury to business or property under RICO); *Williams v. Mohawk Indus., Inc.*, 465 F.3d

12   1277, 1284-85 (11th Cir. 2006) (same).

13        Plaintiffs have also alleged lost opportunities for overtime (SAC ¶ 292) and diminished

14   employment prospects stemming from their retaliatory dismissal from ISU, which harmed their

15   professional reputations and removed them from positions that usually lead to promotions.  (SAC

16   ¶¶ 242, 255, 292.)  As the Ninth Circuit made clear in *Mendoza* and *Diaz*, Plaintiffs had a legal

17   entitlement to relations with their employer unfettered by the harmful acts prohibited under

18   RICO.  *See Mendoza*, 301 F.3d at 1168 n.4; *Diaz*, 420 F.3d at 900.  Thus, these additional

19   injuries are cognizable financial injuries because, as explained in greater detail below, they

20   resulted from acts prohibited under RICO.

21        **C.    Defendants' RICO Offenses Proximately Caused Plaintiffs' Injuries.**

22        Defendants completely ignore Plaintiffs' detailed, meticulous allegations of multiple

23   RICO predicate acts that caused the injuries described above.[9]

24
          [9] Although Plaintiffs have complied with the Ninth Circuit's directive regarding
25   "proximate cause," Plaintiffs note the Ninth Circuit imposed that requirement based on *Hemi
     Group, LLC v. City of New York*, 130 S. Ct. 983 (2010).  There was no majority opinion regarding
26   proximate cause in *Hemi*, so the Supreme Court has not actually definitively foreclosed a lower
     "foreseeability" standard.  *See id.* at 994-95 (joining the Court's opinion "[w]ithout subscribing to
27   the broader range of the Court's proximate cause analysis") (Ginsburg, J., concurring).

28

1.   **RICO Prohibits a Wide Variety of Conduct and Does Not Require Existence of an Official Proceeding.**

RICO prohibits "racketeering activity," which includes acts that violate specific federal criminal statutes, including 18 U.S.C. § 1512 ("Tampering with a witness, victim, or an informant") and 1513 ("Retaliating against a witness, victim, or an informant").  18 U.S.C. § 1961(1).  A "pattern of racketeering activity" requires at least two related "predicate acts." 18 U.S.C. 1961(5); *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

a.   **18 U.S.C. § 1512 Prohibits a Variety of Actions Regardless of the Existence of an "Official Proceeding."**

Contrary to Defendants' unduly simplified view,[10] section 1512 proscribes numerous types of conduct, including:

- Using intimidation, threats, or other corrupt means to persuade, or attempting to persuade, or engaging in misleading conduct, with intent to

  - cause any person to withhold testimony from an official proceeding, 18 U.S.C. § 1512(b)(2)(A);

  - cause any person to destroy or conceal an object so as to impair its availability for use in an official proceeding, 18 U.S.C. § 1512(b)(2)(B);

  - hinder or prevent the communication to law enforcement officials information relating to possible federal offenses, 18 U.S.C. § 1512(b)(3);

- Corruptly destroying or concealing evidence with intent to impair its availability for use in an official proceeding, or otherwise obstructing or impairing an official proceeding, or attempting to do so, 18 U.S.C. § 1512(c)(1)-(2);

- Intentionally harassing, or attempting to harass, another person in order to hinder, dissuade, or prevent any person from (i) reporting to federal officials information relating to possible federal offenses, (ii) arresting or seeking the arrest of another in connection with a federal offense, or (iii) causing a criminal prosecution to be sought or instituted, or assisting in such prosecution or proceeding, 18 U.S.C. § 1512(d)(2)-(4).

Attempting to deflect focus from their wide-ranging misconduct, Defendants argue that Plaintiffs "fail to allege the existence of 'any official proceeding' within the meaning of []

---

[10] Defendants quote only part of one subsection of 1512, omitting relevant parts of 1512(b) and at least two other subsections ((c) and (d)) that define relevant predicate acts.

1   RICO."[11]   (Mot. at 20.)  Here, again, Defendants apparently misread the law.  First of all, the

2   "official proceeding" element is not relevant to Defendants' conduct that violated §§ 1512(b)(3)

3   and 1512(d)(3), which make no mention of official proceedings.  *See United States v. Carson*,

4   560 F.3d 566, 582 (6th Cir. 2009) (holding that courts do not "graft onto § 1512(b)(3) 'an official

5   proceeding' requirement based on statutory language in § 1512(b)(2) that does not appear in §

6   1512(b)(3)") (citation omitted).  Defendants simply ignore these provisions.

7        Second, subsection 1512(f), another part of the statute that Defendants ignore,

8   specifically explains that "an official proceeding need not be pending or about to be instituted at

9   the time of the offense."  RICO liability, therefore, requires only that there be circumstantial

10  facts showing that Defendants realized a proceeding could be commenced in the future.  *See*

11  *Vierria v. Cal. Highway Patrol*, 644 F. Supp. 2d 1219, 1236 (E.D. Cal. 2009); *see also United*

12  *States v. Gonzalez*, 922 F.2d 1044, 1055-56 (2d Cir. 1991) (section 1512 prohibits interference

13  with law enforcement officials during the investigatory stage, not just during formal

14  proceedings).  Here, Defendants' entire course of conduct was intended, at least in part, to

15  prevent reporting of their conduct to law enforcement officials and to protect Defendants from

16  liability.  (SAC ¶¶ 5, 136.)  Officers, such as Defendants, who are intimately familiar with the

17  criminal justice system cannot credibly argue that the conduct outlined in the Second Amended

18  Complaint, including complicity with violence and smuggling of drugs and weapons (*e.g.*, SAC

19  ¶¶ 75-79, 85-88, 96-99, 105, 115, 118-121, 125-127, 129-136, 170-174, 176-186, 209-212), did

20  not carry with it the possibility of official proceedings in the future.  The possibility of official

21  proceedings was particularly apparent when federal investigators directly investigated criminal

22  activity at SATF, and Defendants' statements at the time show that they knew of the risk that the

23  federal investigation would implicate them.  (SAC ¶¶ 129-136, 161-174.)  Thus, the Second

24  _____

25        [11] Defendants already attempted this argument in seeking dismissal of the First Amended
    Complaint and then at the Ninth Circuit.  (MTD FAC at 15-16; Answering Brief of Woodford et.
26  al, at 39-40 (attached as Ex. B to Pltf's RJN).)   The Ninth Circuit rejected this argument by
    acknowledging Defendants' predicate acts and remanding so that Plaintiffs could allege facts to
27  fulfill the proximate cause requirement.  (9th Cir. Op. at 12-13.)

28

1    Amended Complaint necessarily alleges facts sufficient to show that Defendants realized that

2    official proceedings could be commenced in the future.

3         Finally, the Second Amended Complaint does allege the existence of an official

4    proceeding: this lawsuit.  *See* 18 U.S.C. § 1515(a)(1)(A) ("official proceeding" includes "a

5    proceeding before a judge or court of the United States").  Plaintiffs first filed suit against the

6    Defendants on July 21 2008, in the Sacramento Division of this Court.  (*See* Dkt. 47.)  As

7    explained in more detail below,  Defendants violated 18 U.S.C. § 1512 after that date in

8    connection with this official proceeding.  (SAC ¶¶ 264-276.)

9              **b.      18 U.S.C. § 1513 Prohibits Retaliation for Communicating with
               Law Enforcement Officers.**
10

11        Section 1513, another statute Defendants chose to completely ignore, also defines RICO

12   predicate acts, including "knowingly, *with the intent to retaliate*, tak[ing] any action harmful to

13   any person, *including interference with the lawful employment or livelihood of any person*, for

14   providing to a law enforcement officer any truthful information relating to the commission or

15   possible commission of any Federal offense."  18 U.S.C. § 1513(e) (emphasis added).

16         **2.      The Transfers to Different Assignments at SATF Were RICO
                   Predicate Acts That Caused Injury to Plaintiffs' Business or Property.**
17

18        Defendants mention the fact that they transferred Plaintiffs to different assignments at

19   SATF, but conclude without any explanation that the transfers were not RICO predicate acts.

20   (Mot. at 15-16.)  However, the Second Amended Complaint demonstrates how those transfers

21   were predicate acts under RICO and that they caused the injuries described above.

22              **a.      The Transfer of Officer Couch Violated 18 U.S.C § 1512 and
               Caused Injury to His Business or Property.**
23

24        Officer Couch's transfer violated section 1512.  In 2006, inmate Pinuelas participated in

25   ordering an attack on inmate Acosta after Acosta supposedly provided information leading to the

26   discovery of drugs smuggled into SATF.  (SAC ¶¶ 71-77, 94.)  This attack resulted in the

27   shooting death of an inmate.  (SAC ¶¶ 79-80.)  Defendant Boncore knew about the attack in

28   advance, but did nothing to stop it, and she suppressed or destroyed evidence of the attack.

1  (SAC ¶¶ 75-78, 84-89.)  Plaintiffs allege that Defendants decided to transfer Couch to prevent an

2  investigation into the criminal conduct of Pinuelas and Defendants; indeed, Sergeant Goss

3  confirmed this fact.  (SAC ¶¶ 96-99, 105-107.)  Plaintiffs also allege that Boncore admitted to

4  Couch that she had used her influence over Wan to initiate the transfer so that Couch would not

5  investigate the criminal conduct of Pinuelas (which would have uncovered Defendants' related

6  illegal conduct).  (SAC ¶ 104.)  Plaintiffs further allege that this transfer was intended to

7  intimidate and harass Couch so that he would not in the future investigate or report criminal

8  conduct by Pinuelas or Defendants' misconduct.  (SAC ¶ 107.)

9     Defendants realized that there was a possibility of an official proceeding regarding the

10  circumstances of the attack on Acosta, as the Kings County District Attorney's Office and the

11  Deadly Force Review Board had already investigated other elements of the incident.  (SAC ¶¶

12  82-83.)  As knowledgeable law enforcement officers, Defendants particularly must have known

13  that official proceedings were likely if their conduct, which involved them in covering up gang

14  activity related to drug smuggling, became known to federal law enforcement officials.

15     The transfer of Officer Couch thus constituted a RICO predicate act, because it violated

16  18 U.S.C. § 1512(b), which prohibits conduct intended to prevent communication to law

17  enforcement officials regarding the commission of crimes, and 18 U.S.C. § 1512(d), which

18  prohibits conduct intended to prevent any person from causing a criminal prosecution to be

19  sought.  The transfer was the direct cause of the harms alleged: interference with job prospects—

20  including opportunities for overtime work, promotions, and career advancement—and harm to

21  his professional reputation.  Officer Couch thus has established RICO standing.

22          **b.     The Transfer of Officer Jimenez Violated 18 U.S.C. § 1512 and**
              **Caused Injury to His Business or Property.**
23

24     The same is true with respect to Officer Jimenez.  After inmate Zavala was murdered in

25  late 2006, Jimenez spoke to multiple officers, including Defendant Wan, about his concern that

26  Boncore had contributed to the murder.  (SAC ¶¶ 108-113.)  Plaintiffs allege that Defendant Wan

27

28

1   then transferred Jimenez to intimidate and harass him,[12] so that he would not investigate the

2   Zavala murder or the misconduct of Wan and Boncore.  (SAC ¶ 115.)

3          As with the Acosta attack, Defendants knew that official proceedings were likely if

4   evidence of their involvement surfaced.  For example, the Kings County district attorney actively

5   investigated the murder (SAC ¶¶ 126-128), and Defendants must have known that any illegal

6   interference with that investigation would be grounds to initiate an official proceeding.  In fact,

7   even before the Zavala murder, Defendants knew that federal investigators were investigating the

8   activities of peacekeepers in California prisons, an investigation that Defendants knew would

9   have uncovered their participation in those activities.  (SAC ¶¶ 133-134, 160-168.)

10         As with the transfer of Couch, Jimenez's transfer was thus a predicate RICO act in

11   violation of 18 U.S.C. § 1512(b) and (d).  The transfer was the direct cause of the harms alleged:

12   interference with job prospects—including opportunities for overtime work, promotions, and

13   career advancement—and harm to his professional reputation.  Officer Jimenez thus has

14   established standing under RICO.

15                    **3.      In Addition to the Initial Transfers, Plaintiffs Have Alleged Multiple
                              Other RICO Predicate Acts That Caused Their Injuries.**

16

17         Defendants do nothing to refute the multiple other allegations of RICO activity that

18   contributed to Plaintiffs' injuries.  For example, after Officers Couch and Jimenez complained to

19   Internal Affairs, Defendant Wan assigned Officer Couch to a new position so that Officer

20   Jimenez would not have a partner, leaving Officer Jimenez with an untenable workload.  (SAC

21   ¶¶ 143-146.)  This was done to intimidate Jimenez and to dissuade Jimenez, Couch, and others

22   from investigating or reporting Wan's and Boncore's illegal cooperation with and protection of

23   gang member inmates.  (SAC ¶ 147.)  This was thus a violation of at least 18 U.S.C. § 1512(b)

24   and (d), and it was the direct cause of Jimenez's injuries, including unpaid work due to the

25         _____

26              [12] Paragraph 115 of the Second Amended Complaint inadvertently states that the transfer
      was "intended to intimidate and harass Officer Couch," instead of "Officer Jimenez."  Given the
      context, this error does not change the clear allegations of that paragraph, which clearly concerns
27   Jimenez and not Couch.  In any event, this error could easily be remedied by amendment.

28

1    tremendous workload placed on Officer Jimenez.  (SAC ¶ 292.)

2            Similarly, the transfer of Couch to Facilities A and B in November or December 2007

3    was a RICO predicate act that caused harm to Couch.  After Couch had executed a search

4    warrant yielding a substantial quantity of drugs on Facility C, he was moved to Facilities A and

5    B, which was a significant demotion.  (SAC ¶¶ 214-215.)  He then complained that he should be

6    allowed to continue preventing drug trafficking on Facility C, but instead he was assigned to

7    tasks on Facilities A and B that he had no experience doing and for which he had not received

8    adequate training.  (SAC ¶¶ 217-220.)  Defendants intended this demotion and reassignment to

9    prevent Couch from investigating or reporting federal offenses (*i.e.*, drug and weapons

10   trafficking) at SATF, and from investigating or reporting Defendants' protection of those

11   inmates conducting the criminal activity.  (SAC ¶ 221.)  Couch's demotion was therefore a

12   predicate RICO act, because it violated at least 18 U.S.C. § 1512(b) and (d), and it was the direct

13   cause of the injuries to Couch's career that are cognizable under RICO.

14          The dismissal of Officer Jimenez from ISU was also a RICO predicate act, as were the

15   fabricated charges asserted against him after he filed this lawsuit.  Defendants intended the

16   dismissal, which occurred after Defendant Wan engineered false complaints by an inmate, to

17   intimidate Jimenez and further prevent him from investigating criminal conduct within SATF,

18   from investigating Defendants' role in that conduct, and from reporting Defendants' conduct to

19   federal law enforcement officials.  (SAC ¶¶ 229-243.)  The dismissal thus violated at least

20   18 U.S.C. § 1512(b) and (d).  Similarly, one or more of the Defendants fabricated multiple

21   injurious charges against Officer Jimenez after he helped a federal agent communicate with an

22   informant at SATF.  (SAC ¶¶ 264-276.)  These charges, which occurred during this lawsuit, also

23   violated at least section 1512(b) and (d) because Defendants intended to intimidate and harass

24   Officer Jimenez to prevent him from revealing Defendants' involvement with federal crimes to

25   this Court.  (SAC ¶¶ 264-275.)  Because these RICO predicate acts interfered with Jimenez's

26   career and caused him financial loss, including the inability to obtain a promotion for which he

27   was qualified, they proximately caused harm to his business or property.  (SAC ¶¶ 242, 253-255,

28   260-263, 292.)

1    Finally, Defendant Wan had Officer Couch dismissed around January 2008 because

2 Couch had complained about the protection of inmate gang members by Defendant Boncore,

3 investigated inmate gang members, and sought to initiate prosecution of their crimes.  (SAC ¶¶

4 244-248, 251-252.)  Defendants intended the dismissal to prevent Couch from further

5 investigating those crimes or seeking arrests or prosecutions, and from further communicating

6 with federal officials regarding federal offenses, such as drug trafficking, which could have

7 revealed Defendants' illegal actions in cooperation with that activity.  (SAC ¶ 249.)  Couch's

8 dismissal thus violated 18 U.S.C. § 1512(b) and (d).  Defendants also intended Couch's dismissal

9 as retaliation against him for communicating with federal officials in the first place (SAC ¶¶ 162-

10 163, 179-181, 249-252, 297), a clear violation of 18 U.S.C. § 1513, which forbids retaliation for

11 communication with federal officials related to possible federal offenses.  Because these RICO

12 predicate acts interfered with Couch's employment and caused him financial loss, including

13 impaired ability to advance his career, they were a proximate cause of harm to Couch's business

14 or property.  (SAC ¶¶ 253-255, 292.)

15    Defendants try to mischaracterize these clear allegations as claims for "retaliation for

16 refusal to cooperate in the alleged unlawful activity."  (Mot. at 16.)  As explained at length

17 above, this is untrue.[13]  The transfers, demotions, and fabricated charges were themselves RICO

18 predicate acts, not retaliation for Plaintiffs' refusal to join in Defendants' criminal conduct.

19 Also, Defendants' assertion that there can never be RICO liability for "retaliatory actions" is

20 _____

21    [13] Also untrue is Defendants' brazen statement that a large section of the Second
  Amended Complaint (SAC ¶¶ 39-88) merely demonstrates Plaintiffs' dissatisfaction with "the

22 way Defendants did their jobs."  (Mot. at 18.)  The allegations in that section include Wan's
  policy of using intimidation and misleading conduct to prevent investigation and prosecution of

23 crimes on a massive scale (SAC ¶¶ 38-48), and Boncore's destruction or suppression of evidence
  related to the violent assault on an inmate accused of providing information regarding drug

24 smuggling (SAC ¶¶ 71-89.)  Defendants cannot pass these actions off as Defendants "doing their
  jobs" as public servants; these actions were racketeering activities because they violated 18

25 U.S.C. § 1512(b)(3) (prohibiting conduct intended to prevent communication regarding criminal
  offenses), 18 U.S.C. § 1512(c)(1) (prohibiting conduct intended to impair availability of

26 evidence), and 18 U.S.C. § 1512(d) (prohibiting harassment in order to dissuade another from
  seeking arrest of another person or causing a criminal prosecution to be sought).

27

28

1   untrue.  RICO expressly defines retaliation for providing information to law enforcement

2   officials as a predicate act.  18 U.S.C. §§ 1961(1), 1513(e).  As explained above, Plaintiffs have

3   pled harm caused by this sort of retaliation.

4       **D.**    **Plaintiffs Have Alleged a Clear Pattern of Racketeering Activity**

5       Defendants' activities described above were related to their work at SATF, an enterprise,

6   and constituted a pattern of corrupt acts intended to protect gang members at SATF and

7   Defendants themselves.  Thus, these allegations alone demonstrate a pattern of racketeering

8   activity through which Defendants conducted or participated in SATF affairs in violation of

9   18 U.S.C. § 1962(c).  18 U.S.C. § 1961(5); *H.J. Inc.*, 492 U.S. at 239.  Moreover, the Ninth

10  Circuit acknowledged Defendants' "predicate acts" and explicitly identified the transfers of

11  Couch and Jimenez as "racketeering activity in violation of § 1512(b)(3)."  (9th Cir. Op. at 12-

12  13.)  Thus, the Ninth Circuit instructed that Plaintiffs could save the First Amended Complaint

13  by amending it to "establish proximate cause," with no mention of any requirement to further

14  allege a pattern of racketeering activity.  (*Id.*)

15      Even so, the Second Amended Complaint clarified and expanded on numerous, related

16  violations of 18 U.S.C. §§ 1512 and 1513 to further establish a pattern of racketeering activity:[14]

17      •   Boncore suppressed evidence related to the Acosta attack, an incident related to drug

18          smuggling at SATF and in which she has been implicated.  (SAC ¶¶ 71-88, 288-289.)
       This evidence would have been useful in an official proceeding concerning the attack

19          and the drug smuggling, and Boncore must have known that such a proceeding was a
       possibility.  Boncore's conduct violated at least 18 U.S.C. § 1512(c)(1)-(2).

20

21      •   Boncore deliberately botched an investigation into the Zavala murder, including
       destroying evidence and intimidating other officers in order to prevent them from

22          investigating or reporting illegal activities of peacekeepers.  (SAC ¶¶ 118-127.)  This
       conduct violated at least 18 U.S.C. § 1512(b)(2)-(3), (c)(1)-(2), and (d)(2)-(4).

23

24      [14] Although Plaintiffs only identify 18 U.S.C. §§ 1512 and 1513 as the statutes defining

25  Defendants' predicate acts, (SAC ¶¶ 297, 309-310), Defendants seek dismissal based on
    Plaintiffs' failure to allege bribery in violation of 15 U.S.C. § 1510.  But Plaintiffs do not

26  currently base Defendants' RICO liability on acts of bribery, so Defendants' discussion of bribery
    is utterly irrelevant.  Defendants appear to have included this argument because, again, they

27  errantly copied and pasted text from their previous motion to dismiss.  (Dkt. 80-2 at 15-16.)

28

- Wan instructed Couch not to put anything in writing after an informant confessed to involvement in the Zavala murder, thereby hampering the district attorney's investigation.  (SAC ¶¶ 129-135.)  This was misleading, corrupt conduct in violation of at least 18 U.S.C. § 1512(b)(2)-(3) and (c)(1)-(2).

- In August 2007, Wan made statements to Couch suggesting that Wan could harm the employment of Couch's father.  (SAC ¶¶ 148-152.)  This was harassment intended to dissuade Couch from communicating Defendants' misconduct to federal officials, and to prevent arrests and criminal proceedings to be sought or initiated.  This conduct thus violated at least 18 U.S.C. § 1512(d)(1)-(4).

- Wan intentionally gave misleading answers to federal agents regarding activity of gang members at SATF, and he instructed SATF staff not to provide such information to the federal agents.  (SAC ¶¶ 160-172.)  This was a corrupt act and a threat against any officer who otherwise would have cooperated with federal agents, and it was intended to prevent communication to federal officials regarding possible federal offenses, such as smuggling of drugs and weapons.  (SAC ¶¶ 172-174.)  This conduct violated at least 18 U.S.C. § 1512(b)(1)-(3), (c)(2), and (d)(2)-(4).

- In June 2007, when an informant provided information leading to discovery of weapons at SATF and told SATF officials about an upcoming drug shipment, Wan told Officer Couch, who had been in contact with federal officials, not to investigate and not to involve the Federal officials.  (SAC ¶¶ 176-180.)  Wan then had a false affidavit drafted to implicate the informant with respect to the weapons find.  (SAC ¶¶ 182-185.)  Wan then met with a federal agent regarding the incident, but falsely told the agent that there was nothing he could do.  (SAC ¶ 186.)  This conduct violated at least 18 U.S.C. § 1512(b)(3), (c)(2), and (d)(2)-(4).

- When inmate Pinuelas put a hit on Officer Couch's life, Defendants refused to initiate a threat assessment or take any other protective action.  (SAC ¶¶ 206-209.)  This was retaliation for Couch's previous communication with federal officials.  Such retaliation violated at least 18 U.S.C. § 1513(c).

- When five Mexican Mafia members provided information to CDCR investigators explaining Defendant Boncore's cooperation with the gang's criminal activities, that information was removed from official records of the investigation.  (SAC ¶¶ 279-284.)  Defendant Wan used his influence to have the information removed, thereby preventing it from being available to this lawsuit, which had already begun.  (SAC ¶ 285.)  This violated at least 18 U.S.C. § 1512(b)(2)-(3).

These activities constitute a clear pattern of protecting both gang members at SATF and Defendants themselves from criminal investigations, arrests, and prosecutions.  As with the First Amended Complaint, the Second Amended Complaint therefore alleges a pattern of racketeering activity under RICO, which only requires at least two related predicate acts.  18 U.S.C. §

1  1961(5); *H.J. Inc.*, 492 U.S. at 239.  Plaintiffs have alleged facts sufficient to state a claim under

2  RICO, and Defendants' motion should be dismissed.

3  **III.    TO THE EXTENT THE COMPLAINT FAILS TO STATE ANY CLAIM,
        PLAINTIFFS SHOULD BE GRANTED LEAVE TO AMEND.**

4

5      Dismissal without leave to amend is improper "unless it is clear that the complaint

6  [cannot] be saved by any amendment."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,

7  989 (9th Cir. 2009) (quotation omitted).  Leave to amend may be denied due to undue delay, bad

8  faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of

9  the amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir.

10  2008).

11      None of these circumstances applies here.  Defendants offer no argument against leave to

12  amend separate from their assertion that the Second Amended Complaint is insufficient.  The

13  Ninth Circuit identified two defects in Plaintiffs' previous complaint, and the Second Amended

14  Complaint is Plaintiffs' first attempt to cure them.  In the event that the Court rules that Plaintiffs

15  have not done so, Plaintiffs request leave to amend in order to respond to the Court's ruling.

16                          **CONCLUSION**

17      The Second Amended Complaint details an extraordinary level of corruption and illegal

18  conduct at SATF.  When Plaintiffs went beyond their official duties in order to speak out against

19  that corruption, Defendants used their influence and power to retaliate against Plaintiffs, in

20  violation of the First Amendment.  Furthermore, contrary to Defendants' naked assertions

21  otherwise, the Second Amended Complaint alleges a litany of racketeering activities committed

22  by Defendants that caused injuries to Plaintiffs cognizable under RICO.  Plaintiffs have stated

23  sufficient facts to support their causes of action, and their effort to vindicate their rights and fight

24  Defendants' illegal conduct should proceed.  Defendants' motion should be denied.

25

26

27

28

1   Dated:  August 24, 2010

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORRISON & FOERSTER LLP
BROOKS M. BEARD
DANIEL A. ZLATNIK

By: _____/s/ Daniel A. Zlatnik_____
         Daniel A. Zlatnik

LAW OFFICE OF EDWARD J. CADEN
EDWARD J. CADEN

Attorneys for Plaintiffs RYAN COUCH and
KENNETH JIMENEZ