**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RYAN COUCH, et al., | CASE NO. CV F 08-1621 LJO DLB |
| Plaintiffs, | **ORDER ON RECONSIDERATION OF DENIAL OF RENEWED DEPOSITIONS** (Doc. 233.) |
| vs. | |
| TOMMY WAN, et al., | |
| Defendants. | |

_____/

**INTRODUCTION**

Plaintiff correction officers Ryan Couch ("Officer Couch") and Kenneth Jimenez ("Officer Jimenez") seek reconsideration of U.S. Magistrate Judge Beck's ("Judge Beck's") orders to deny redeposing a percipient witness and to deny requiring non-party California Department of Corrections and Rehabilitation ("CDCR") to redesignate a F.R.Civ.P. 30(b)(6) witness regarding production of CDCR records. CDCR contends that Officers Couch and Jimenez fail to establish need or good cause to support reconsideration. This Court considered Officers Couch and Jimenez' reconsideration motion on the record and, for the reasons discussed below, DENIES reconsideration.

**BACKGROUND**

Officers Couch and Jimenez pursue free speech retaliation and Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, claims against two CDCR prison officials and a CDCR investigator. Officers Couch and Jimenez' claims address prison gang activity and retaliation and

1

1   harassment of Officer Couch and Jimenez for their criticisms of handling prison gang members.

2     Officers Couch and Jimenez deposed CDCR Lieutenant Dan Gross ("Lt. Gross") prior to

3   CDCR's completion of its electronic data production and argue that CDCR's delay to produce emails

4   entitles Officers Couch and Jimenez to redepose Lt. Gross for three hours.  Officers Couch and Jimenez

5   further contend that CDCR F.R.Civ.P. 30(b)(6) designee Joanna Cordova ("Ms. Cordova") was

6   unqualified to testify as to CDCR document responses and production to require CDCR to redesignate

7   another F.R.Civ.P. 30(b)(6) witness on CDCR's document production.  During an August 27, 2012

8   telephone conference, Judge Beck denied Officer Couch and Jimenez' requests to redepose Lt. Gross

9   and to require CDCR to redesignate another F.R.Civ.P. 30(b)(6) witness.[1]

10   **RECONSIDERATION STANDARDS**

11     Officer Couch and Jimenez contend that Judge Beck's orders are erroneous to warrant this

12   Court's reconsideration.

13     Reconsideration motions are committed to the discretion of the trial court.  *Rodgers v. Watt*, 722

14   F.2d 456, 460 (9th Cir. 1983) (en banc); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C. Cir.

15   1987).   A party seeking reconsideration must set forth facts or law of a strongly convincing nature to

16   induce the court to reverse a prior decision.  *See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield*,

17   634 F.Supp. 656, 665 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514

18   (9th Cir. 1987).

19     This Court reviews a motion to reconsider a Magistrate Judge's ruling under the "clearly

20   erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  As

21   such, the court may only set aside those portions of a Magistrate Judge's order that are either clearly

22   erroneous or contrary to law.  Fed.R.Civ.P. 72(a); *see also Grimes v. City and County of San Francisco*,

23   951 F.2d 236, 240 (9th Cir.1991) (discovery sanctions are non-dispositive pretrial matters that are

24   reviewed for clear error under Rule 72(a)).

25     A magistrate judge's factual findings are "clearly erroneous" when the district court is left with

26

27      [1]  Officers Couch and Jimenez seek reconsideration of Judge Beck's oral orders as no written order appears in the record.

28

2

the definite and firm conviction that a mistake has been committed.  *Security Farms v. International Bhd. of Teamsters*, 124 F.3d 999, 1014 (9th Cir. 1997); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. 2003).  The "contrary to law" standard allows independent, plenary review of purely legal determinations by the magistrate judge.  *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3rd Cir.1992); *Green*, 219 F.R.D. at 489; *see also Osband v. Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Knutson v. Blue Cross & Blue Shield of Minn.*, 254 F.R.D. 553, 556 (D. Minn. 2008); *Rathgaber v. Town of Oyster Bay*, 492 F.Supp.2d 130, 137 (E.D.N.Y.2007); *Surles v. Air France*, 210 F.Supp.2d 501, 502 (S.D. N.Y. 2001); *see Adolph Coors Co. v. Wallace*, 570 F.Supp. 202, 205 (N.D. Cal. 1983).

"Pretrial orders of a magistrate under § 636(b)(1)(A) . . . are not subject to a de novo determination . . ." *Merritt v. International Bro. of Boilermakers*, 649 F.2d 1013, 1017 (5th Cir. 1981).  "The reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes*, 951 F.2d at 241; *see Phoenix Engineering & Supply v. Universal Elec.*, 104 F.3d 1137, 1141 (9th Cir. 1997) ("the clearly erroneous standard allows [for] great deference").  A district court is able to overturn a magistrate judge's ruling "'only if the district court is left with the definite and firm conviction that a mistake has been made.'"  *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Supp.2d 980, 983 (S.D. Cal. 1999) (quoting *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)).

With these standards in mind, this Court turns to Officer Couch and Jimenez' criticisms of Judge Beck's orders.

## REDEPOSING LT. GROSS

On December 14, 2010, Officers Couch and Jimenez served their subpoena on CDCR to seek documents regarding staffing policies and practices of CDCR's Investigative Services Unit ("ISU"), CDCR's Institutional Gang Investigations ("IGI"), ISU's and IGI's organizational structures, and defendant Tommy Wan's[2] ("Warden Wan's") role in ISU oversight and direction, including personnel decisions.  Officers Couch and Jimenez accuse CDCR of engaging in "a consistent strategy of delay, raising excuse after excuse for refusing to produce any electronic documents," including missing agreed

---

[2]     At times relevant to this action, Warden Wan served as a CDCR associate warden.

3

on and extended production dates and to require Officers Couch and Jimenez to share in production costs.

Judge Beck's December 7, 2011 order required CDCR to produce requested electronic data no later than January 31, 2012.  Officers Couch and Jimenez note that CDCR produced no electronic data prior to the January 31, 2012 deadline or Lt. Gross' February 6, 2012 deposition and that CDCR agreed to produce all electronic discovery by March 30, 2012.  However, Officers Couch and Jimenez explain that CDCR raised new concerns about the volume of documents to review and that Officers Couch and Jimenez agreed to CDCR's production of large batches of electronic documents for their attorneys' review and to identify electronic documents to produce.

On June 14 and July 13, 2012, CDCR produced the requested electronic documents, which included multiple documents authored by Lt. Gross and unavailable for his February 6, 2012 deposition, which lasted two hours.  Officers Couch and Jimenez point to Lt. Gross' August 2010 email to Warden Wan's personal AOL account to express Officer Gross' desire to prevent a corrections officer's reassignment: "Him coming over here places me . . . in danger of false allegations. I need your help with this one Tommy."  Officers Couch and Jimenez characterize Lt. Gross' email as relevant to Warden Wan's authority over personnel changes and protection of officers loyal to him.

Officers Couch and Jimenez point to "a second late-produced document" in which Lt. Gross suggested reassignment of an IGI sergeant in that the "goal will be to reduce all overtime expenditures and remove agitating staff from IGI and ISU. . . . Also, we can move loyal staff with no associations to [redacted name] or other agitators."  The recipient forwarded Lt. Gross' message to defendant Ralph Diaz ("Warden Diaz"), now a CDCR associate warden, and stated: "Check this timing out.  How would he know this (last sentence)."

F.R.Civ.P. 30(a)(2)(A)(ii) requires leave of court to reopen a deposition without the parties' stipulation.  F.R.Civ.P. 26(b)(2)(C) delineates factors to consider to reopen a deposition:

> (i) the discovery [second deposition] sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

4

1

        (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

2

3

4        The propriety of a deponent's reopened deposition lies in the court's discretion. *See Dixon v.*

5  *Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996).  Without a showing of need or good reason,

6  courts generally will not require a deponent's reopened deposition. *Dixon*, 164 F.R.D. at 690. Reopened

7  depositions are disfavored, except in certain circumstances, such as, long passage of time with new

8  evidence or new theories added to the complaint. *Graebner v. James River Corp.*, 130 F.R.D. 440, 441

9  (N.D. Cal. 1990).

10        Officers Couch and Jimenez argue that the late produced CDCR electronic data is new

11  information otherwise previously unavailable to warrant reopening Lt. Gross' deposition, especially

12  given the 1½ year delay of CDCR's document production.  Officers Couch and Jimenez note that they

13  cannot reasonably obtain information elsewhere as Lt. Gross "is the only person with personal

14  knowledge of the meaning, intent, and full context of the documents he authored" and who can lay a

15  foundation for the documents. Officers Couch and Jimenez contend that reopening Lt. Gross' deposition

16  is not duplicative "because it is a previously unavailable challenge" to Warden Wan's contentions

17  "regarding his role in retaliating against Plaintiffs for speaking out about misconduct." Officers Couch

18  and Jimenez characterize their February 6, 2012 deposition of Lt. Gross as "not a tactical decision" but

19  "the result of CDCR's excessive and unreasonable delays." Officers Couch and Jimenez point to limited

20  cost to reopen Lt. Gross' deposition in that they seek only three hours.

21        CDCR characterizes Lt. Gross' reopened deposition as "unreasonably cumulative and

22  duplicative" given Officer Couch and Jimenez' "tactical decision" to depose Lt. Gross "at a time before

23  they had discovered additional information."  CDCR points to the absence of prejudice to Officers

24  Couch and Jimenez given their "ample opportunity to obtain the information by discovery in the action."

25  CDCR questions the relevancy of Lt. Gross' emails upon which Officers Couch and Jimenez rely given

26  that the emails arose "years after the alleged protected activity."

27        Officers Couch and Jimenez fail to substantiate need and good cause to reopen Lt. Gross'

28  deposition.  Officers Couch and Jimenez point to two of Lt. Gross' communications arising well after

the events subject to Officers Couch and Jimenez' claims to raise doubts as to the relevancy, let alone, the need to redepose Lt. Gross.  Rather than address meaningfully the factors to reopen Lt. Gross' deposition, Officers Couch and Jimenez focus on attacking CDCR's document production.  In addition, Officers Couch and Jimenez fail to justify the need for a three-hour reopened deposition, especially considering that they deposed Lt. Gross originally for only two hours.  Lt. Gross' reopened deposition would be unreasonably cumulative or duplicative, and Officers Couch and Jimenez fail to demonstrate an absence of ample opportunity or likely benefit to warrant reopening Lt. Gross' deposition.

### REDESIGNATION OF F.R.CIV.P. 30(b)(6) WITNESS

Officers Couch and Jimenez conducted on February 24, 2012 the F.R.Civ.P 30(b)(6) deposition of Ms. Cordova, whom they claim that CDCR designated to testify as to:

1. CDCR's process to search for, locate and collect or obtain documents to respond to Officer Couch and Jimenez' document requests;

2. The institutions, agencies, offices, people, physical locations, and physical or electronic data repositories employed by CDCR to search for, locate and collect or obtain documents responsive to Officer Couch and Jimenez' document requests; and

3. CDCR policies and procedures regarding the search for, location and collection or obtaining documents responsive to Officer Couch and Jimenez' document requests.

F.R.Civ.P. 30(b)(6) requires a subpoenaed public entity to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization."

An entity bears "a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Starlight Int'l, Inc., v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan.1999) (a corporation has a duty under Rule 30(b)(6) to provide someone who is knowledgeable to provide "binding answers on behalf of the corporation").  F.R.Civ.P. 30(b)(6) "implicitly requires persons to review all matters known or reasonably available to [the entity] in preparation for the 30(b)(6) deposition." *T & W Funding Co. XII, L.L.C. v. Pennant Rent–A–Car*, 210 F.R.D. 730, 735 (D.

Kan.2002).  "However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *Starlight*, 186 F.R.D. at 639.

Officers Couch and Jimenez contend that Ms. Cordova "was unable to provide meaningful testimony regarding CDCR's actual search for and collection of documents."  Officers Couch and Jimenez characterize Ms. Cordova's ability as limited "to discuss only the process employed by CDCR at the highest level" in that Ms. Cordova testified that:

1.   Ms. Cordova routed document requests to supervisors so that their units could conduct searches and collect documents;

2.   Supervisors would be knowledgeable about document collection efforts in their respective units;

4.   Ms. Cordova lacked knowledge of processes employed to search for and collect responsive documents; and

5.   Ms. Cordova did not know how physical collection occurred within departments or how CDCR responded to requests regarding discipline.

Officers Couch and Jimenez contend that Ms. Cordova lacked knowledge "to explain whether and how CDCR carried out its obligation to respond to document requests."

Officers Couch and Jimenez hold CDCR to a duty to educate and prepare its F.R.Civ.P. 30(b)(6) designee for a deposition and to designate multiple witnesses as necessary "to respond to relevant areas of inquiry."  Officers Couch and Jimenez argue that they are entitled to "who actually searched for and collected the documents, where those individuals actually searched, and how it was decided which documents would be produced."  Officers Couch and Jimenez accuse CDCR of dodging deposition questions "by designating an individual who cannot explain CDCR's actual document search and collection efforts."

CDCR responds that Ms. Cordova's designation was limited to CDCR's process to search for, locate and collect or obtain documents to respond to Officer Couch and Jimenez' document requests. CDCR notes that it designated Scott MacDonald ("Mr. MacDonald") to address CDCR's computers and related systems since 2006 to create, modify, store, transmit and access electronic documents and systems. CDCR argues that Ms. Cordova need not "have specific personal knowledge regarding every

1  topic within the Rule 30(b)(6) notice."

2      Officers Couch and Jimenez offer little meaningful that CDCR's designations of Ms. Cordova

3  and Mr. MacDonald failed to satisfy F.R.Civ.P. 30(b)(6).  "If one believes that the Rule 30(b)(6) witness

4  has not properly investigated or prepared to give testimony, it is incumbent upon the protesting party to

5  have laid a proper foundation at deposition so that the court can make a determination about the extent

6  of preparation."  *Century 21 Real Estate, LLC v. All Professional Realty, Inc.*, 2012 WL 2116409, at *3

7  (E.D. Cal. 2012).  Officers Couch and Jimenez offer an insufficient foundation to conclude that Ms.

8  Cordova failed to provide information known or reasonably available to CDCR.  Officer Couch and

9  Jimenez' complaints address the depth of Mr. Cordova's testimony, not its adherence to F.R.Civ.P.

10  30(b)(6) and ignore Mr. MacDonald's contribution.  Officers Couch and Jimenez attempt to hold Ms.

11  Cordova to omnipresence not required by F.R.Civ.P. 30(b)(6) and thus fail to substantiate need to

12  redesignate a F.R.Civ.P. 30(b)(6) witness.

13  **CONCLUSION AND ORDER**

14      For the reasons discussed above, this Court DENIES Officers Couch and Jimenez

15  reconsideration.

16      IT IS SO ORDERED.

17  **Dated:    September 21, 2012              /s/ Lawrence J. O'Neill**
                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28